**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **MARQUISE LELAND WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-0479-TCK-FHM** |
| | ) | |
| **DON NEWBERRY, Court Clerk of Tulsa** | ) | |
| **County;** | ) | |
| **ALLISON HIGGINS, Deputy Court** | ) | |
| **Clerk in Tulsa County;** | ) | |
| **ALISA SCRAPER, Deputy Court Clerk** | ) | |
| **in Tulsa County;** | ) | |
| **JASON ADAMS, supervisor of the Tulsa** | ) | |
| **County Court Clerk's Criminal and** | ) | |
| **Traffic Division,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

This is a civil action. Plaintiff Marquise Leland White, a state inmate, appears pro se and in forma pauperis. This matter is before the Court on Plaintiff's amended complaint (Dkt. 9), filed November 4, 2019. For the reasons that follow, the Court finds that the amended complaint is subject to being dismissed for failure to state a claim upon which relief may be granted. Plaintiff may file a second amended complaint, within 30 days from the entry of this order, should he be able to cure the deficiencies identified in this order.

## I. Screening/dismissal standards

Under the Prison Litigation Reform Act (PLRA), federal courts must engage in a preliminary screening of cases in which prisoners seek redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The PLRA's screening provision requires the court to identify any cognizable claim and dismiss any claim which is

frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). Similarly, when a court permits a litigant to proceed with a civil action in forma pauperis, "the court shall dismiss the case at any time" for these same reasons. *Id.* § 1915(e)(2)(B).

In determining whether dismissal is appropriate, the court must accept as true all the well-pleaded factual allegations in the complaint and construe the complaint in plaintiff's favor. *United States v. Supreme Court of N.M.*, 839 F.3d 888, 899 (10th Cir. 2016); *Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). In addition, the court must liberally construe a complaint filed by a pro se plaintiff. *Kay*, 500 F.3d at 1218. This simply means the court should overlook basic drafting errors and, "if [the] court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the rule of liberal construction "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

Applying these standards, the court ultimately must decide whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the complaint should be dismissed. *Bell Atl. Corp.*, 550 U.S. at 558.

## II.    Plaintiff's allegations and claims in the amended complaint[1]

Plaintiff brings this action against four defendants, all of whom are associated with the District Court of Tulsa County: (1) Don Newberry, the Court Clerk, (2) Allison Higgins, a Deputy Court Clerk, (3) Alisa Scraper, a Deputy Court Clerk, and (4) Jason Adams, a supervisor in the criminal and traffic division of the Court Clerk's office.  Dkt. 9, at 1.  Plaintiff claims all four defendants violated his First, Fifth, and Fourteenth Amendment rights to access the courts, to equal protection of the law, and to due process of law.  Dkt. 9, at 2.  He alleges (1) that Higgins and Scraper made errors in March and May 2017 when they docketed his application for postconviction relief, and (2) that Newberry and Adams, in their roles as supervisors, failed to acknowledge and correct those errors.  Dkt. 9, at 2-7.  The following facts are drawn from the amended complaint.

In March 2017, Plaintiff was incarcerated at the Lawton Correctional Facility (LCF).  Dkt. 9, at 3.  Under Oklahoma law, an application for postconviction relief must be submitted on Form 13.11 and must be "authenticated" or "verified."  *Id.* at 2-3 (citing OKLA. STAT. tit. 22, §§ 1080, 1081 and Rule 5.6, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2019)).  Pro se inmates may obtain a blank Form 13.11 from the LCF's law library.  *Id.* at 2 n.1.  On March 22, 2017, Eden Clark, a notary public employed by the LCF, witnessed Plaintiff sign six documents: one "Affidavit for Post [C]onviction relief" (Form 13.11), one "Pauperis Affidavit"

---

[1] In his amended complaint, Plaintiff asks the Court to consider the 19 attachments he submitted with his original complaint.  Dkt. 9, at 2.  This is contrary to a local court rule that requires an amended complaint "to be retyped or handwritten and filed so that it will be complete in itself including exhibits, without reference to the [original] pleading."  LCvR 9.2(c).  Because Plaintiff appears pro se, the Court will consider Plaintiff's original attachments solely for the purpose of screening his amended complaint.  However, should Plaintiff file a second amended complaint, he must comply with LCvR 9.2(c) by attaching any relevant exhibits to the second amended complaint.

(Form 13.3), and four affidavits containing Plaintiff's sworn statements. Dkt. 9, at 3. Plaintiff "included [these] six documents in a large box container filled with nearly a thousand pages of other documents comprising the Plaintiff's Post Conviction Pleadings and prepared the documents to be submitted to the Tulsa County Court Clerk by mail." *Id.* Prison officials submitted Plaintiff's box container to the United States Postal Service (USPS) on March 22, 2017, with the required $20.35 postage affixed, and Plaintiff obtained a postal tracking number. *Id.*; Dkt. 1, at 29. Records Plaintiff obtained from the USPS show that the box container was delivered to the Tulsa County Courthouse on March 24, 2017, at 8:39 a.m. Dkt. 9, at 3; Dkt. 1, at 32-33.

On March 22, 2017, Plaintiff also submitted a second package to prison officials for mailing to the Tulsa County Courthouse. Dkt. 9, at 4. The second package was an envelope containing "a complete unnotarized 'copy set' of each original pleading that [was] included in the Plaintiff's box container." *Id.* In the same envelope, Plaintiff enclosed a letter requesting a file-stamped copy of each pleading he submitted in the box container. *Id.* Prison officials submitted the second package to the USPS on March 22, 2017, with the requisite $6.77 postage affixed. *Id.* Plaintiff did not receive a tracking number for the second package and could not obtain information from the USPS regarding when it was delivered to the courthouse. *Id.* Based on "[o]ther documents docketed by the court clerk on 3/28/17, as well as outgoing mail logs from the [LCF]," Plaintiff believes that the second package was delivered to the Tulsa County Courthouse on the same day as the box container, March 24, 2017. *Id.*

On March 24, 2017, Plaintiff gave two envelopes to prison officials for mailing to the Tulsa County Courthouse. Dkt. 9, at 5; Dkt. 1, at 52. One envelope contained a personal letter to the judge; the other envelope contained a written request for a file-stamped copy of Plaintiff's motion under seal. Dkt. 9, at 5-6 & n.6; Dkt. 1, at 52.

On March 28, 2017, in *State v. White*, Tulsa County Case No. CF-2006-240, Defendant

Allison Higgins docketed (1) Plaintiff's application for postconviction relief, (2) Plaintiff's

pauperis affidavit, (3) Plaintiff's motion under seal, and (4) Plaintiff's motion for evidentiary

hearing. Dkt. 9, at 4 n.4; *see also* Dkt. 1, at 47 (copy of state court docket sheet). Plaintiff alleges

Higgins erred in docketing (1) his application for postconviction relief, which was approximately

30 pages, and (2) his motion under seal, which was five pages, because for each pleading Higgins

docketed only one page—the first "cover" page of each pleading. Dkt. 9, at 4-6, 9; Dkt. 1, at 44,

46. After noticing these docketing errors, Plaintiff, through his counselor at the LCF, contacted

the Tulsa County Clerk's office by phone. Dkt. 1, at 51. Plaintiff spoke with Samantha, a clerk

for Tulsa County District Judge Sharon Holmes. *Id.* Samantha told Plaintiff that "she had the

box." *Id.*

On May 18, 2017, Defendant Alisa Scraper "finally acknowledged reception of the

Plaintiff's box container." Dkt. 9, at 6. Scraper docketed the pleadings from the box container, in

five separate volumes, as "Brief of Petitioner in Support of his Petition for Post-Conviction

Relief." Dkt. 9, at 6; Dkt. 1, at 44, 47-48. When Plaintiff "saw the pleadings from the box

container online," Dkt. 1, at 51, he noticed that "several original documents comprising the various

styled pleadings of the Plaintiff's petition for post conviction relief . . . [were] missing, altered, or

defective," Dkt. 9, at 6. In addition, Plaintiff observed that Scraper filed, in volume 2 of 5, some

documents that he did not include in the box container—specifically, "two, four-page affidavits

and attached photographs executed by Takisha White-Quitto before Notary Public Cathy Foster

on 4/11/17." Dkt. 9, at 6-7. According to Plaintiff, Myechia Love hand-delivered the White-

Quitto affidavits and photographs to the Tulsa County Courthouse and gave them to Samantha

sometime in May 2017. *Id.* at 7; Dkt. 1, at 71. Plaintiff alleges that, sometime after Love delivered

the White-Quitto affidavits, the notary seals on the affidavits were removed. Dkt. 9, at 7. Plaintiff further alleges that Scraper denied receiving any hand-delivered documents in support of Plaintiff's application for postconviction relief. *Id.*

In June 2018, Plaintiff wrote a letter to Defendant Don Newberry informing Newberry that the single page Higgins docketed, on March 28, 2017, as Plaintiff's application for postconviction relief "should be considered an inauthentic or unverified application." Dkt. 9, at 7. Plaintiff received a response, dated June 14, 2018 and signed by a deputy clerk, stating that "the original document of the Application for Post-Conviction Relief filed stamped March 28, 2017" was "only one page long and there are not any holes in it that we would find if it had been stapled to any other pages," and that "none of the other document[s] [Plaintiff] filed with [the office] on March 28, 2017 where [*sic*] 30 pages long." Dkt. 1, at 46; Dkt. 9, at 7-8. After receiving this letter, Plaintiff wrote a second letter to Newberry, explaining that he sent a single page of the application as a "cover page" to be file-stamped and returned to him while he sent his complete, verified application for filing by including it in the box container. Dkt. 1, at 87-89.[2] According to Plaintiff, "[b]etween 3/24/17, and 5/17/17, [t]hough the Court Clerk had possession of Plaintiff's [box container], [t]he Tulsa County Court Clerk refused to offer any information acknowledging reception of [the box container] or any explanation regarding the filing status of the Plaintiff's pleadings other than 'pending.'" Dkt. 9, at 5-6.

Sometime before September 14, 2018, Plaintiff presented his concerns about Defendants' alleged docketing errors to the Oklahoma Court of Criminal Appeals (OCCA). Dkt. 9, at 7. On September 14, 2018, the OCCA "remanded [the] matter to Tulsa Count[y] District Court Judge

---

[2] The second letter is not dated and it is not clear from the record when, or if, Plaintiff mailed this letter to Newberry.

James Caputo" with directions to address Plaintiff's "complaints regarding the preparation of the Post Conviction appeal record in the Plaintiff's felony case as well as documents included in the pagination of the certified record which the Plaintiff maintains are altered, missing, and defective." Dkt. 9, at 7. Judge Caputo conducted an evidentiary hearing on September 27, 2018, and heard testimony from Defendant Jason Adams and District Attorney James Dunn. *Id.* at 8. Plaintiff filed three motions in state district court on October 10, 2018, seeking relief relating to the alleged docketing errors. *Id.* On October 11, 2018, Judge Caputo "entered an order allegedly addressing the Plaintiff's concerns regarding the missing, and defective documents in support of [his] petition for post conviction relief." *Id.* Plaintiff alleges Judge Caputo "did not take into account any of [his] factual evidence or exhibits" before entering the order. *Id.* Plaintiff subsequently filed several motions with the OCCA, raising concerns about the adequacy of the state district court's order. *Id.* Plaintiff alleges that the OCCA, like the state district court, failed to adequately consider his exhibits "before declaring the pagination of the record in the Plaintiff's criminal matter complete." *Id.*

Based on these factual allegations, Plaintiff asserts that the Defendants' actions "whether by neglect, omission, or mistake violated [his] rights" to due process, to equal protection and to access the courts and caused him "emotional pain, suffering and distress." Dkt. 9, at 10-11. Plaintiff seeks declaratory and injunctive relief,[3] compensatory damages in the amount of $500 from "each defendant jointly and severally," punitive damages in the amount of $1,250,000 from

---

[3] Plaintiff specifically seeks a "preliminary and permanent injunction" (1) ordering defendants "to account for" the alleged constitutional violations and "rectify the errors" made in filing his application for postconviction relief, (2) declaring "the unverified pleadings filed by [Higgins] an 'improper application,'" (3) "remov[ing] any restriction under Oklahoma's uniform Post Conviction act [and (4)] granting Plaintiff White another opportunity to petition for post conviction relief." Dkt. 9, at 11.

each defendant, and the costs of this action. Dkt. 9, at 11-12. Plaintiff demands a jury trial and asserts he "ha[s] been and will continue to be irreparably injured by the conduct of the defendants unless this [C]ourt grants the declaratory and injunctive relief which [Plaintiff] seeks." *Id.* at 11.

## III.    Discussion

Plaintiff brings this action under 42 U.S.C. § 1983. Dkt. 9, at 1. To state a facially plausible § 1983 claim, a plaintiff must allege facts showing that a person acting under color of state law deprived the plaintiff of a federally protected right. *Schaffer v. Salt Lake City Corp.*, 814 F.3d 1151, 1155 (10th Cir. 2016). As previously stated, Plaintiff alleges Defendants deprived him of his rights, under the First, Fifth and Fourteenth Amendments, (1) to access the courts, (2) to equal protection of the laws and (3) to due process of law by failing to properly docket his application for postconviction relief. Plaintiff purports to sue each defendant individually and in his or her and official capacity. Dkt. 9, at 2. For the reasons that follow, the Court finds that the amended complaint is subject to being dismissed for failure to state a claim upon which relief may be granted.

### A.    Official-capacity claims

Plaintiff purports to sue each defendant in his or her official capacity. Dkt. 9, at 2. "[O]fficial capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). All four defendants are associated with the Tulsa County Court Clerk's office. By suing these defendants in their official capacities, Plaintiff seeks to impose liability against Tulsa County. Because Tulsa County is a municipality, it is a "person" subject to liability under § 1983. *Burke v. Regalado*, 935 F.3d 960, 998 (10th Cir. 2019). But "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694.

Rather, to impose liability against Tulsa County, Plaintiff must plausibly allege (1) that one or more of the defendants violated his federally protected rights and (2) that Tulsa County acted with deliberate indifference by maintaining a policy or custom that led to those violations. *Burke*, 935 F.3d at 998-99; *see also Monell*, 436 U.S. at 694 ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.").

Even assuming one or more of the defendants violated one or more of Plaintiff's federally protected rights in the manner alleged, there are no facts in the amended complaint suggesting that Defendants' acts or omissions resulted from Defendants' execution of a policy or custom promulgated or maintained by Tulsa County. Plaintiff does assert that the "Tulsa County Clerk['s] office engaged in a pattern of abuse that has resulted in the violation of Plaintiff White's right to access the courts, Equal Protection under the law, and due process." Dkt. 9, at 9. But this assertion does not identify a Tulsa County policy or custom as the driving force behind the alleged pattern of abuse. Without facts demonstrating that Tulsa County deliberately promulgated or maintained a policy or custom that caused Defendants to violate Plaintiff's federally protected rights, the amended complaint fails to state any plausible official-capacity claims.

### B.      Individual-capacity claims

Plaintiff also purports to sue each defendant in his or her individual capacity. Dkt. 9, at 2. "Individual capacity 'suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law.'" *Brown v. Montoya*, 662 F.3d 1152, 1163 n.8 (10th Cir. 2011) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Under § 1983, a defendant "may be subject to personal liability and/or supervisory liability." *Id.* at 1163. To impose personal

liability against a defendant, a plaintiff must show that the defendant was personally involved in the alleged constitutional violation. *Brown*, 662 F.3d at 1163. To impose supervisory liability against a defendant, a plaintiff must "show that '(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.'" *Id.* at 1164 (quoting *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010)).

Highly summarized, Plaintiff claims (1) Higgins violated his right to access the courts, his right to equal protection and his right to due process by failing to properly docket his application for postconviction relief, (2) Scraper violated his right to access the courts and to due process, by omitting some documents from his application for postconviction relief, adding documents he did not include in his application, and altering the Quitto-White affidavits, and (3) Adams and Newberry, in their supervisory roles, are liable for Higgins' and Scraper's violations of his constitutional rights because Newberry and Adams were aware of the docketing errors but failed to correct them. Dkt. 9, at 7-11. Even liberally construed, the amended complaint is subject to being dismissed for failure to state any plausible individual-capacity claims.

### 1. Right-to-access claim

It is well established that prisoners have a constitutional right to access the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (1996). While the exact source of this right is subject to debate, the United States Supreme Court has explained that "the very point of recognizing any access claim is to provide some effective vindication for a separate and distinct right to seek judicial relief for some wrong." *Christopher v. Harbury*, 536 U.S. 403, 414-15 & n.12 (2002). In *Christopher*, the Supreme Court suggested that right-of-access claims fall into two categories. *Id.* at 413. "The

first, termed 'forward looking claims,' are cases where official action frustrates a plaintiff's ability to bring a suit at the present time." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208 (10th Cir. 2004) (quoting *Christopher*, 536 U.S. at 413). For example, a plaintiff may claim that prison officials are denying him access to a prison law library and thereby preventing him from filing a civil rights action. *Id.* The second, "termed 'backwards looking claims,' arise when plaintiffs allege that a specific claim 'cannot be tried (or tried with all the evidence) [because past official action] caused the loss of or inadequate settlement of a meritorious case.'" *Id.* (alteration in original) (quoting *Christopher*, 536 U.S. at 413-14).

Plaintiff's allegations suggest he is asserting a backwards looking claim. To state a plausible claim, he must (1) "describe the official acts frustrating the litigation," (2) describe "the underlying cause of action . . . lost," and (3) "identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Christopher*, 536 U.S. at 415. In addition, he must allege the official acts were intentional, *Simkins v. Bruce*, 406 F.3d 1239, 1242 (10th Cir. 2005), and resulted in "actual injury," *Lewis*, 518 U.S. at 349.

Accepting Plaintiff's allegations as true, Plaintiff adequately describes "official acts" that frustrated his state postconviction proceeding and the underlying claim he allegedly lost. Plaintiff alleges Higgins' and Scraper's errors in docketing his application for postconviction relief, as well as supporting exhibits, frustrated his "attempt[] to raise an actual innocence claim based on audio recordings of another man admitting to committing the crimes" for which Plaintiff was convicted. Dkt. 9, at 9-10. Plaintiff further alleges Higgins' and Scraper's "negligence" and "mistake[s]" in docketing his application for postconviction relief "resulted in an impediment on [his] ability to adequately raise his actual innocence claim" because (1) the state courts held Plaintiff responsible for omissions in his application for postconviction relief, (2) the state courts considered the

allegedly altered Quitto-White affidavits "unsworn and inadmissible," and (3) Oklahoma law now bars Plaintiff from filing a complete application for postconviction relief, supported by admissible evidence, to present his actual-innocence claim in any future state postconviction proceeding. Dkt. 9, at 9-11.

Nonetheless, for two reasons, Plaintiff's allegations fail to state a plausible right-of-access claim against any of the four defendants. First, Plaintiff's own allegations suggest Higgins' and Scraper's actions were negligent, not intentional. *See, e.g.*, Dkt. 9, at 9-11 (characterizing Defendants' actions as "mistakes" based on "neglect" and "negligence"). But only intentional conduct by officials that impedes a plaintiff's access to the courts violates the constitution. *See Simkins*, 406 F.3d at 1242 (noting that "when access to courts is impeded by mere negligence, as when legal mail is inadvertently lost or misdirected, no constitutional violation occurs").

Second, Plaintiff fails to sufficiently allege an "actual injury." *See Lewis*, 518 U.S. at 349-55 (discussing actual-injury requirement for denial-of-access claims). Plaintiff alleges he was "deemed responsible for the omission of pages from the application an denied an opportunity to file his actual innocence claim based on the audio recordings in his possession." Dkt. 9, at 10. But Plaintiff's own allegations suggest that Scraper ultimately docketed, albeit as part of a brief in support of his application, (1) the contents of the box container and (2) affidavits Love delivered to the Tulsa County Courthouse on his behalf. Dkt. 9, at 6; Dkt. 1, at 44-47. Plaintiff's exhibits show that the contents of the container included, among other items, CD's and mini-cassettes. Dkt. 1, at 44, 47. Plaintiff's allegations further show that both the state district court and the OCCA addressed his complaints that certain documents were omitted from his application for postconviction relief and that the OCCA determined the record provided for his postconviction appeal was complete before it adjudicated any claims Plaintiff raised in his postconviction appeal.

Dkt. 9, at 7-8.[4]

For these reasons, Plaintiff fails to state a plausible right-of-access claim against either Higgins or Scraper. Because he fails to state a plausible claim against either Higgins or Scraper, he necessarily fails to state plausible right-of-access claims against either Adams or Newberry under a theory of supervisory liability. *Brown*, 662 F.3d at 1164.

### 2. Equal-protection claim

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause "embodies a general rule that states must treat like cases alike but may treat unlike cases accordingly." *Tonkovich v. Kan. Bd. of Regents,* 159 F.3d 504, 532 (10th Cir. 1998) (quoting *Vacco v. Quill*, 521 U.S. 793, 799 (1997)). To state a plausible equal-protection claim, a plaintiff must allege that the defendant, acting under color of state law, intentionally treated the plaintiff differently from others who were similarly situated. *Id.*

Though not entirely clear, Plaintiff appears to assert an equal-protection claim against Higgins, as an individual, and against Adams and Newberry in their roles as Higgins' supervisors. Dkt. 9, at 9-10. Plaintiff's most specific reference to an equal-protection violation consists of the following statement:

---

[4] By asking this Court, in part, to grant injunctive relief in the form of an order "declaring the unverified pleadings filed by [Higgins] an 'improper application'" and directing Defendants to "remove any restriction under Oklahoma's uniform Post Conviction act [and ] grant[] Plaintiff White another opportunity to petition for post conviction relief," Plaintiff essentially asks this Court to invalidate the OCCA's decision that the application was properly filed under state law and its determination that the postconviction appeal was complete. But "[f]ederal courts do not have jurisdiction 'over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege the that the state court's action was unconstitutional.'" *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 (10th Cir. 1986).

> Allison Higgins actions denied [him] the right to equal protection in the administration of state laws that govern Oklahoma's uniform post conviction act. Oklahoma Statute § 1081 mandates that Defendant Higgins should have determined the single page of the Plaintiff's post conviction application form [was] an in-authentic or unverified application.

Dkt. 9, at 9. Nothing in this statement, and nothing in any other portion of the amended complaint, suggests that Higgins intentionally treated Plaintiff differently than any other state prisoner seeking state postconviction relief when she docketed one page of his application for postconviction relief instead of docketing his full, verified application, the latter of which was docketed by Scraper two months later. Dkt. 9, generally. Thus, without further factual development, Plaintiff fails to state a plausible equal-protection claim against Higgins. And, without a plausible claim that Higgins violated his right to equal protection, Plaintiff also fails to state a plausible equal-protection claim against either Adams or Newberry under a theory of supervisory liability. *Brown*, 662 F.3d at 1164.

### 3.  Due-process claim

The Due Process Clause of "[t]he Fourteenth Amendment prohibits a state from 'depriv[ing] any person of life, liberty, or property, without due process of law.'" *Seegmiller v. LaVerkin City*, 528 F.3d 762, 766 (10th Cir. 2008) (quoting U.S. Const., amend. XIV, § 1). The Due Process Clause contains both a procedural and substantive component. *Id.* "[P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision." *Archuleta v. Colo. Dep't of Institutions, Div. of Youth Servs.*, 936 F.2d 483, 490 (10th Cir. 1991). To state a plausible due-process claim, a plaintiff must therefore allege that the defendant deprived the plaintiff of a protected liberty interest either (1) without sufficient process or (2) by acting with "deliberate indifference to

plaintiff's liberty in a manner shocking to the judicial conscience." *Allen v. Clements*, 930 F. Supp. 2d 1252, 1264 (D. Colo. 2013).

Plaintiff alleges Defendants violated his right to due process by failing to properly docket his application for postconviction relief. Even assuming Plaintiff has a protected liberty interest in filing an application for postconviction relief in state court, his factual allegations do not support either a procedural or substantive due-process claim. As previously discussed, Plaintiff's allegations show that, despite Defendants' actions and omissions, Plaintiff nevertheless (1) filed an application for postconviction relief in state district court and (2) pursued a postconviction appeal in the OCCA after the state district court denied his application. Dkt. 9, at 7-8. On these facts, Plaintiff fails to state a plausible claim that Defendants violated either his procedural or substantive due process rights by depriving him of a protected liberty interest. Thus, the amended complaint fails to state a plausible due-process claim against any defendant.

### 4. Conclusion

Based on the foregoing, Plaintiff fails to state any plausible individual-capacity claims against any of the named defendants. Thus, the amended complaint is subject to being dismissed for failure to state a claim upon which relief may be granted.

## IV. Opportunity to amend

Ordinarily, pro se litigants should be given a reasonable opportunity to "remedy defects potentially attributable to their ignorance of federal law." *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). Dismissal without leave to amend is appropriate only if amendment would be futile. *Hall*, 935 F.2d at 1110. Applying these principles, the Court will afford Plaintiff an opportunity to file a second amended complaint should he be able to cure the deficiencies identified in this order. If Plaintiff files a second amended complaint, he must use the court-approved form

for a civil rights complaint. LCvR 9.2(a). The Clerk of Court shall mail to Plaintiff a blank civil rights complaint (Form PR-01), marked as "Second Amended Complaint" and identified as Case No. 19-CV-479-TCK-FHM. If Plaintiff files a second amended complaint, he must comply with LCvR 9.2(c) which provides that any amended pleading "must be retyped or handwritten and filed so that it will be complete in itself including exhibits, without reference to the [previously-filed complaint]." Should Plaintiff fail to file a second amended complaint by the deadline stated in this order, or should Plaintiff file a second amended complaint that fails to state a claim upon which relief may be granted, the Court may dismiss this action without prejudice and without further notice.

## V.  Marshal service forms

Lastly, the record reflects that Plaintiff previously submitted a summons and a USM-285 Marshal service form for each defendant named in the amended complaint. However, the USM-285 Marshal service forms Plaintiff submitted were blank. The Clerk of Court shall therefore mail to Plaintiff the four (4) blank USM-285 Marshal service forms he submitted with his summonses. Plaintiff shall complete the USM-285 Marshal service forms, according to the instructions on the forms, and promptly return the forms to the Clerk of Court. Should Plaintiff file a second amended complaint naming any new defendants, he may request additional blank summonses and USM-285 Marshal service forms from the Clerk of Court.

**ACCORDINGLY, IT IS HEREBY ORDERED** that:

1. Plaintiff's amended complaint (Dkt. 9) is subject to being dismissed for failure to state a claim upon which relief may be granted.

2. Within thirty (30) days from the entry of this order, or on or before January 21, 2020, Plaintiff shall file a second amended complaint on the court-approved form.

3. The Clerk of Court shall mail to Plaintiff a blank civil rights complaint (form PR-01), marked as "Second Amended Complaint" and identified as **Case No. 19-CV-479-TCK-FHM**.

4. The Clerk of Court shall mail to Plaintiff the four (4) blank USM-285 Marshal service forms Plaintiff submitted with his summonses.

5. Plaintiff shall complete the USM-285 Marshal service forms and promptly return them to the Clerk of Court.

6. Should Plaintiff fail to file a second amended complaint by the deadline stated in this order, or should Plaintiff file a second amended complaint that fails to state a claim upon which relief may be granted, the Court may dismiss this action without prejudice and without further notice.

**DATED** this 20th day of December 2019.

TERENCE C. KERN
United States District Judge